**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JEANETTE ANDERSON, BENJAMIN BROCKINGTON, MELANEY BROMEL, CORNELIUS CAPERS, SAM CAPERS,JR., FRANCES DEAS, GLORIA EVANS, JONATHAN GRANT, SAMUEL GRANT, SUSAN GREEN, CRYSTAL HOOKS, ANNETTE MURRAY, LUTHER PENNYE, JEREMIAH PINCKNEY, LINDA PYOS, EZEKIAL RICE, JAMES SHUBRICK, EVELYN WASHINGTON, RICKY WASHINGTON, DEBERA WHITE, DONNA WILSON,  WILLIAM E. GRANT, RALPH E. HOWELL, CLARISSA J. GRANT, ANTHONY S. HOWARD, RHONDA H. HOWARD, BEATRICE HOWELL, SONYA C. SMITH, as ADMINISTRATOR OF THE ESTATE OF HARRY SMITH, all of whom are citizens of South Carolina, Plaintiffs, | ) Case No:  2:09-cv-02031-CWH  ) Causes of Action: ) Count I – Trespass ) Count II – Public Nuisance ) Count III – Private Nuisance ) Count IV – Negligence ) Count V – Wantonness ) Count VI – Negligence *Per Se* ) Count VII – Ultrahazardous          Activity ) Count VIII – Fraudulent ) Count IX – Unjust Enrichment          Suppression |
| Vs | ) PLAINTIFFS DEMAND A ) TRIAL BY STRUCK JURY |
| INTERNATIONAL PAPER COMPANY, a New York corporation, Defendants. | ) ) ) ) |

**COMPLAINT**

COME NOW Plaintiffs, by and through the undersigned counsel, to file this Complaint against International Paper, alleging and averring as follows:

**Introduction**

1.    This lawsuit is centered around the operation of a paper manufacturing facility located in downtown Georgetown, South Carolina (hereinafter the "Facility") from which

tons of hazardous substances, pollutants, contaminants, and other toxic materials are, and have for years been, continuously released into the environment twenty-four hours a day.

2.    The hazardous substances, pollutants, contaminants, and other toxic materials released into the environment from the Facility (hereinafter the "Hazardous Substances") include generally, without limitation:

> A. "Hazardous Chemicals," as described in 29 CFR Part 1910 Subpart Z;
>
> B. "Hazardous Air Pollutants" (HAPs), as described in 40 CFR § 63.2;
>
> C. "Hazardous Wastes," as described in 40 CFR Part 261, Subpart D;
>
> D. "Acute Hazardous Wastes," as described in 40 CFR § 261.30(b);
>
> E. "Hazardous Waste Constituents," as described in 40 CFR Part 261, Appendix VIII;
>
> F. "Hazardous Substances," as described in 40 CFR § 302.4; 40 CFR § 117.3;
>
> G. "Extremely Hazardous Substances," as described in 40 CFR Part 355, Appendices A and B;
>
> H. "Toxic Chemicals," as described in 40 CFR § 372.65;
>
> I. "Imminently Hazardous Chemical Substances or Mixtures," as described in 15 U.S.C § 2606(f)(1976), as amended; and
>
> J. "Hazardous Materials," as described in 49 CFR § 105.5(b).

3.    The Hazardous Substances released into the environment from the Facility include specifically, without limitation:

> A. Polychlorinated Dioxins/Furans, including, without limitation, all cogeners such as 2,3,7,8-Tetrachlorodibenzo-p-dioxin (TCDD), chlorinated dibenzofurans (CDF), and other structurally related groups of chemicals from the family of  halogenated aromatic hydrocarbons;
>
> B. Particulate Matter, including PM-2.5 and PM-10;
>
> C. Volatile Organic Compounds (VOC's), including, without limitation, acetaldehyde, acrolein, benzene, ethylbenzene, ethylene, ethylene glycol,

formaldehyde, methylene chloride, methyl ethyl ketone (MEK), phenols, 1,1,1-trichloroethane, trichloroethylene, toluene, and xylene, including all Mixed isomers; and

D. Polycyclic Aromatic Hydrocarbons (PAH's), including, without limitation, anthracene, benzo(b,j,k)fluoranthene, benzo(ghi)perylene, benzo(a)pyrene, coronene, dibenz(a,h)anthracene, indeno(1,2,3,-cd)pyrene, naphthalene, ovalene, phenanthrene, propylene, pyrene, and styrene.

4.      Dioxins are unreasonably dangerous and are known to be capable of causing significant health problems in both humans and animals. TOXICOLOGICAL PROFILE FOR CHLORINATED DIBENZO-*P*-DIOXINS, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, December 1998. In fact, the IARC has classified 2,3,7,8-tetrachloro-p-dioxin as a Class I Known Human Carcinogen. The toxicity of dioxins first became known more than 40 years ago, beginning in the early 1960's.

During that 40-year period, dioxins have caused death and disease:

A. Among the inhabitants of a Dutch community after a 1963 explosion of a chemical plant near Amsterdam;

B. Among American soldiers and Vietnamese as a result of the use of the defoliant Agent Orange during the Vietnam War;

C. Among Italians as a result of a 1976 explosion at a Seveso, Italy chemical plant; and

D. Among the inhabitants of the entire town of Times Beach, Missouri as a result of the use of dioxin-contaminated waste water used to control dust in the town.

5.      Furans are unreasonably dangerous and are known to be capable of causing significant health problems in both humans and animals. TOXICOLOGICAL PROFILE FOR 2,3 BENZOFURAN, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, September 1992. The

unreasonably dangerous nature of furans was known no later than 1960. Wilson, R.H., McCormick, W.E., *Plastics: The Toxicology of Synthetic Resins*, AMA ARCHIVES OF INDUSTRIAL HEALTH 21:536-548 (1960).

6.      Polycyclic aromatic hydrocarbons are unreasonably dangerous and are known to be capable of causing significant health problems in both humans and animals. TOXICOLOGICAL PROFILE FOR POLYCYCLIC AROMATIC HYDROCARBONS, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, August 1995.  The unreasonably dangerous nature of polycyclic aromatic hydrocarbons has been known for almost a century. Mixtures of polycyclic aromatic hydrocarbons that include benzo[a]pyrene such as coal tar were shown to be dermal carcinogens in animals as early as 1918. Yamagiwa, K., Ichikawa, K., *Experimental Study of the Pathogenesis of Carcinoma*. JOURNAL OF CANCER RESEARCH 3:1-29 (1918).

7.      The Hazardous Substances are known to have severe and adverse health effects on humans, including, without limitation, the diseases from which Plaintiffs now suffer or have suffered.

8.      The Hazardous Substances are unreasonably dangerous and have long been known to cause significant adverse health effects in both humans and animals.

9.      The Hazardous Substances released into the environment from the Facility were and are accompanied by – indeed, even evidenced by – the deposition of particulate matter (hereinafter the "Particulate Matter") and certain noxious odors (hereinafter the "Noxious Odors"), which are simply the physical manifestation of the Hazardous Substances.

10.    The Facility has been rated (http//www.scorecard.org) as being among the "dirtiest facilities in the U.S." because:

A. It is in the top 10 percent in total environmental releases;

B. It is in the top 10 percent in non-cancer risk from both air and water releases; and

C. It is in the top 10 percent in air releases of recognized carcinogens.

11.    Defendant, International Paper Company, is a global corporation organized and existing under New York law and having its principal place of business located in Tennessee (hereinafter "International Paper"). Although it has no principal place of business in South Carolina, International Paper is authorized to operate and conduct business in this State, and, in fact, actively operates the Facility in Georgetown, South Carolina.

12.    All Plaintiffs are present or past citizens and residents of South Carolina, specifically the City of Georgetown and its surrounding areas.

13.    Plaintiffs have resided in the community and/or areas that surround the Facility and have either owned or leased property located in that community. In addition, Plaintiffs are all persons who have losses occasioned by International Paper's actions, including, without limitation, personal injuries, medical problems, fear of future medical problems, and property damage, all of which were proximately caused by the release of the Hazardous Substances, Particulate Matter, and Noxious Odors into the environment from the Facility.

14.    By virtue of 28 U.S.C. § 1332, this Court has diversity jurisdiction over all of Plaintiffs' state law causes of action because there is complete diversity between the

parties and each Plaintiffs' individual claim exceeds $75,000 (excluding interest and costs).

15.     Venue is permissible and proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in Georgetown, South Carolina and the persons and properties at issue are located there.

16.     When reference in this Complaint is made to any act or omission by the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of the Defendants, and did so while acting within the scope of their employment or agency.

17.     Plaintiffs have brought this case seeking damages and injunctive relief for injuries proximately caused by the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility.

18.     Despite knowing for several years that it was causing Hazardous Substances, Particulate Matter, and Noxious Odors to be released into the environment from the Facility, International Paper intentionally failed to disclose this information to Plaintiffs. As a result:

> A.     For several years Plaintiffs have been continually and unknowingly exposed to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility. As a direct and proximate consequence of their exposure to the Hazardous Substances, Plaintiffs' health has been impaired and they have suffered injuries. Moreover, as a result of the length and level of their exposure to the Hazardous Substances, Plaintiffs' long term health is at risk.

B.    For several years, real property owned by Plaintiffs has been continually and unknowingly contaminated by the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility. As a direct and proximate consequence of this contamination, Plaintiffs have suffered damage to and diminution of the value of their real property, and they have lost the expected use and enjoyment of their property.

**Factual Allegations**

19.    The Facility is a paper manufacturing mill located in Georgetown, South Carolina.

20.    International Paper regularly and periodically caused the Facility to release Hazardous Substances, Particulate Matter, and Noxious Odors into the environment.

21.    The actions of International Paper and its employees, agents, officers, and representatives, constituted violations of laws intended to protect Plaintiffs from the effects of the Hazardous Substances, Particulate Matter, and Noxious Odors, including, without limitation, the following laws:

A.    THE RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, *et seq*. (1976), as amended, as described in 40 CFR Parts 239-282 and in ADEM1 Admin. Code R. 335-13 and 335-14 (hereinafter "RCRA").

B.    THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT, 42 U.S.C. §§ 9601, *et seq.* (1980) as amended, as described in 40 CFR Parts 370 – 374 (hereinafter "CERCLA").

C.    SUPERFUND AMENDMENT AND REAUTHORIZATION ACT OF 1986, Pub. L. No. 99-499 (codified as amended in scattered sections of the UNITED STATES CODE), as described in 40 CFR Parts 370 – 374 (hereinafter "SARA"). This legislation reauthorized CERCLA to continue cleanup activities around the country.

D.    THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), as amended, as described in 40 CFR Part 370. Also known as Title III of SARA, this legislation was enacted to help local communities protect public health, safety, and the environment from chemical hazards.

E.     OSHA2 Hazardous Waste Operations and Emergency Response Standard, which applies to all facilities and situations in which workers are exposed to physical or chemical hazards during activities such as cleaning up hazardous waste sites or responding to emergencies involving releases of hazardous materials or wastes under CERCLA or RCRA, as described in 29 CFR §§ 1910.120 and 1926.65.

F.     THE CLEAN AIR ACT, 42 U.S.C. §§ 7401, *et seq.* (1970), as amended, as described in 40 CFR Parts 50 – 97, and in ADEM Admin. Code R. 335-3 and in the JCDH-APCP3 Rules and Regulations.

G.     THE CLEAN WATER ACT, 33 USCS §§ 1251, *et seq.* (1972), as amended, as described in 40 CFR Parts 100 – 149 and in ADEM Admin. Code R. 3356-6.

H.     THE SOLID WASTE DISPOSAL ACT, 42 USCS §§ 6901 *et seq.*;

I.     THE SOUTH CAROLINA POLLUTION CONTROL ACT, *S.C. Code Sections 48-1-10 et seq.*;

J.     THE SOUTH CAROLINA HAZARDOUS WASTES MANAGEMENT ACT, *S.C. Code Sections 44-56-10 et seq.*;

K.     SOUTH CAROLINA SOLID WASTE POLICY AND MANAGEMENT ACT, *44-96-10 et seq.*;

L.     THE SOUTH CAROLINA ENVIRONMENTAL MANAGEMENT ACT;

M.     THE SOUTH CAROLINA WATER POLLUTION CONTROL ACT, *S.C. Code Sections 48-1-10, et seq.*;

N.     THE SOUTH CAROLINA UNDERGROUND STORAGE TANK AND WELLHEAD PROTECTION ACT OF 1988, *S.C. Code Sections* 22-36-1, *et seq.*;

O.     SCDHEC REG. 61-107.12;

P.     SCDHEC REG. 61-62.6;

Q.     SCDHEC REG. 61-79;

R.     South Carolina **Hazardous Waste Management Regulations R.61-79**;

22.     The actions of International Paper in violating the foregoing laws and regulations

constitute violations of duties imposed by law and intended to prevent harm to.

23.     At all times pertinent hereto, International Paper knew, or should have known, that the Facility was releasing Hazardous Substances, Particulate Matter, and Noxious Odors into the environment at a level that was unlawful and at a level that could cause injury to persons and property.

24.     At all times pertinent hereto, International Paper knew, or should have known, that the operations, waste management, and emissions controls at the Facility have been environmentally unsound and that, as a result, Hazardous Substances, Particulate Matter, and Noxious Odors have been released into the environment and onto Plaintiffs and their real property.

25.     International Paper was required to report the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility, but for many years International Paper underreported those releases. International Paper knew, or should have known, that it was underreporting the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility.

26.     Plaintiffs were among the intended beneficiaries of International Paper's duty to report the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility.

27.     Exposure to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility are known to cause, promote, and accelerate cancer, to cause birth defects, and to cause other serious, disabling, and life-threatening diseases and health conditions in humans.

28.     At all times pertinent hereto, International Paper knew or should have known that

the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment could, and in fact, did, directly and proximately cause, promote, and accelerate cancer, cause birth defects, and cause other serious, disabling, and life-threatening diseases and health conditions in humans.

29.     The Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility have, in fact, directly and proximately caused, promoted, and accelerated cancer, caused birth defects, and caused other serious, disabling, and life-threatening diseases and health conditions in Plaintiffs.

30.     The Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility have been deposited onto and contaminated Plaintiffs' real property.

31.     At all times pertinent hereto, International Paper knew or should have known that the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment could, and in fact, did, directly and proximately cause damage to real property in the community surrounding the Facility.

32.     Plaintiffs' exposure to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility directly and proximately caused Plaintiffs to suffer damages, including, without limitation:

    A.     Serious, disabling, and life-threatening diseases and health conditions.

    B.     Emotional injuries, including pain and suffering.

    C.     Loss of wages.

    D.     Medical expenses.

    E.     Future medical expenses.

F.     Loss of enjoyment of life.

33.     International Paper has used Plaintiffs' real property as if that property belonged to International Paper and was a part of the Facility. The manner in which International Paper has done this is by dumping its waste, debris, and ash on and near Plaintiffs' properties, by its continuing use of those piles, and by its failure to remove the existing hundreds of thousands of tons of waste, debris, and ash dumped on or near Plaintiffs' properties.

34.     International Paper reaps tremendous economic benefit and avoids substantial costs by its use of Plaintiffs' properties as its own effective supplementary dumping grounds.  International Paper could remove the waste, debris, and ash and cease and desist from further creation and use of waste, debris, and ash piles on or near Plaintiffs' properties, but has chosen not to do so in order to save itself money, thus gaining the use and enjoyment of the saved money while at the same time reducing the use and enjoyment of Plaintiffs' properties. International Paper knew, or should have known, that its actions were invasive and interfered with Plaintiffs' enjoyment of their real property.

35.     International Paper negligently and/or knowingly suppressed the following facts, all of which it was required to disclose:

A.     The nature and extent of the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment.

B.     The fact that unprotected persons, including Plaintiffs, should not be exposed to the Hazardous Substances, Particulate Matter, and Noxious Odors released from the Facility into the environment.

C.     That exposure to the Hazardous Substances, Particulate Matter, and Noxious Odors released from the Facility into the environment could occur by breathing, ingesting, or otherwise coming into contact with the Hazardous Substances, Particulate Matter, and Noxious Odors.

D.     That exposure to the Hazardous Substances, Particulate Matter, and Noxious Odors released from the Facility into the environment could cause, promote, and accelerate cancer, cause birth defects, and cause other serious, disabling, and life-threatening diseases and health conditions.

E.     That the Hazardous Substances, Particulate Matter, and Noxious Odors released from the Facility into the environment could cause a diminution in value of property and the loss of enjoyment thereof.

36.     Through its actions and by suppressing the foregoing information, International Paper prevented Plaintiffs and other neighboring property owners and residents from fully evaluating and understanding the situation and delayed Plaintiffs' assertion of their legal rights.

37.     In addition to knowing that their actions and inactions were wrongful, Defendants know or had reason to know that Facility's releases of hazardous substances onto neighboring residential areas was and is improper as creating public nuisance under South Carolina statutory laws and the common law in existence at time relevant hereto.

## COUNT I
## TRESPASS

38.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 37 above as if fully restated herein.

39.     Defendants recklessly, knowingly, and willfully caused and allowed hazardous toxic chemicals and waste to be released and discharged onto and into the ground, into the water, into the atmosphere, and onto the properties and persons of Plaintiffs, who live nearby. These emissions have resulted in an actual physical invasion onto and into Plaintiffs' properties. This physical invasion is continuing.

40.     The entry and presence of the particulate matter and other airborne materials, including associated hazardous substances, on Plaintiffs' properties is unauthorized.

41.    Defendants knew that the contaminants they were allowing to be discharged were exceedingly dangerous and injurious to both property and human beings.

42.    Defendants have not sought or obtained Plaintiffs' consent to deposit and/or store particulate matter and other airborne materials, including associated hazardous substances, on Plaintiffs' properties.

43.    Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

44.    As a direct and proximate result of International Paper's trespass onto Plaintiffs' property and person, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT II
## PUBLIC NUISANCE

45.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 44 above as if fully restated herein.

46.    Plaintiffs bring suit against Defendants for creating a public nuisance. The release and discharge of hazardous substances, pollutants, contaminants, and other toxic materials including, without limitation, ultra-hazardous, toxic chemicals, and other harmful substances, by International Paper's Facility has unreasonably interfered with the

health, safety, and property rights of the surrounding community and therefore constitutes a public nuisance to a large number of persons.

47.     The actions of Defendants, including, but not limited to the release and discharge of hazardous substances, pollutants, contaminants, and other toxic materials, are subversive of public order, decency, and/or morals, and/or constitute an obstruction of public rights.

48.     The injuries caused by the public nuisance are unique to Plaintiffs in this case hereby entitling them to be awarded damages for their injuries.

49.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

50.     As a direct and proximate result of International Paper's actions, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT III
## PRIVATE NUISANCE

51.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 50 above as if fully restated herein.

52.     Defendants have invaded and interfered with, and are invading and interfering with the Plaintiffs' interest in the private use and enjoyment of their properties through the release of particulate matter and other airborne materials, including associated

hazardous substances, onto Plaintiffs' properties and persons thereby resulting in a private nuisance for which Defendants are responsible.

53.     Plaintiffs further assert that said activities have created a private nuisance by way of the release of hazardous substances, pollutants, contaminants, and other toxic materials including but not limited to, ultra-hazardous, toxic chemicals, and other harmful substances, into the environment thereby naturally and proximately causing Plaintiffs to suffer personal injuries, land damage, and loss of use and enjoyment of their properties.

54.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

55.     As a direct and proximate result of International Paper's actions, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

**COUNT IV**
**NEGLIGENCE**

56.     Plaintiffs incorporate herein by reference the allegation set forth in paragraphs 1 through 55 above as if fully restated herein.

57.     Defendants have owed and currently owe a duty of reasonable care to Plaintiffs in the operation and maintenance of, and in the dissemination of full and accurate information concerning, the Facility and its releases of particulate matter and other airborne materials, including associated hazardous substances.

58.     Defendants have breached and are breaching this duty by releasing, and failing to take adequate action to prevent the release of, particulate matter and other airborne materials, including associated hazardous substances, from the Facility onto Plaintiffs' properties and persons. In addition, Defendants have breached this duty by their suppression of information.

59.     As a result of these breaches, and as a direct and proximate result of International Paper's negligence, gross negligence, reckless, and/or willful and wanton behavior, Plaintiffs' health has been jeopardized, and Plaintiffs have been prevented from fully evaluating the situation, previously asserting their legal rights to protection of their persons and properties, and taking measures to minimize their potential exposure to hazardous substances.

60.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

61.     As a direct and proximate result of International Paper's negligence, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT V
## WANTONNESS

62.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1

through 61 above as if fully restated herein.

63.     Defendants owe, and at all relevant times owed, a duty of reasonable care to Plaintiffs. Plaintiffs were the reasonably foreseeable victims of the dissemination and deposition of contaminants of the Facility, including, without limitation, ultra-hazardous, toxic chemicals, and other harmful substances, of which Defendants were aware.

64.     At all relevant times, Defendants knew, or should have known, of the dangers and hazards of ultra-hazardous, toxic chemicals and other harmful substances to Plaintiffs and their properties. Defendants possessed, or should have possessed, such knowledge that the acts and/or omissions of Defendants, its officers, agents and/or employees failed to prevent the ultra-hazardous, toxic chemicals and other harmful substances from migrating offsite and accumulating on Plaintiffs' properties; constituted a continued disposal of waste containing these toxic chemicals and substances onto the ground and in surface waters; allowed contaminants to escape into and be carried by the air into the environment and to Plaintiffs and their properties; failed to properly and expeditiously abate and remediate the contamination of the Facility; and caused or allowed contaminated soils and dust to be transported from the Facility and deposited on Plaintiffs' properties, all constitute wanton negligence which exhibits a willful, wanton and reckless disregard for the safety and health of the Plaintiffs and the property rights of Plaintiffs.

65.     International Paper's actions and/or omissions as alleged herein exhibit, and continue to exhibit, a willful, wanton, and reckless indifference to the health, welfare and rights of Plaintiffs. The acts and/or omissions constitute wanton negligence.

66.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

67.     As a direct and proximate result of International Paper's wanton negligence, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT VI
## NEGLIGENCE PER SE

68.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 67 above as if fully restated herein.

69.     Defendants owe, and at all relevant times owed, a duty of reasonable care to Plaintiffs. Plaintiffs were the reasonably foreseeable victims of the dissemination and deposition of contaminants of the Facility, including, without limitation, ultra-hazardous, toxic chemicals, and other harmful substances, of which Defendants were aware.

70.     At all relevant times, Defendants knew, or should have known, of the dangers and hazards of ultra-hazardous, toxic chemicals and other harmful substances to Plaintiffs and their properties. Defendants possessed , or should have possessed, such knowledge that the acts and/or omissions of Defendants, its officers, agents and/or employees failed to prevent the ultra-hazardous, toxic chemicals and other harmful substances from migrating offsite and accumulating on the Plaintiffs' properties; constituted a continued disposal of

waste containing these toxic chemicals and substances onto the ground and in surface waters; allowed contaminants to escape into and be carried by the air into the environment and to Plaintiffs and their properties; failed to properly and expeditiously abate and remediate the contamination of the Facility; and caused or allowed contaminated soils and dust to be transported from the Facility and deposited on Plaintiffs' properties, all constitute wanton negligence which exhibits a willful, wanton and reckless disregard for the safety and health of Plaintiffs and the property rights of Plaintiffs.

71.    International Paper's actions and/or omissions as alleged herein exhibit, and continue to exhibit, a willful, wanton, and reckless indifference to the health, welfare and rights of Plaintiffs. The acts and/or omissions constitute wanton negligence.

72.    Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

73.    As a direct and proximate result of International Paper's wanton negligence, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT VII
## ULTRAHAZARDOUS ACTIVITY

74.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 73 above as if fully restated herein.

75.     Defendants were and are engaged in abnormally dangerous activities by the manner in which they have deposited, stored, and released particulate matter and other airborne materials, including associated hazardous substances, at the Facility. International Paper's activities have resulted and are resulting in the intentional, incidental, and/or accidental release of particulate matter and other airborne materials, including associated hazardous substances, from the Facility, which (a) created a high degree of risk of harm to others, particularly Plaintiffs; (b) created a risk involving a likelihood that the harm threatened by International Paper's activities would be great; (c) created a risk of harm that could not be eliminated by the exercise of reasonable care; (d) were not a matter of common usage; and (e) were inappropriate to the place that they were being carried on, in that they constituted a non-natural use of International Paper's land which imposed an unusual and extraordinary risk of harm to Plaintiffs' persons and properties as well as to other persons and properties in the vicinity.

76.     As a direct and proximate result of International Paper's conduct in engaging in the abnormally dangerous activities alleged above, particulate matter and other airborne materials, including associated hazardous substances, which were released, deposited, and stored at the Facility have escaped onto Plaintiffs' persons and properties. The harm sustained by Plaintiffs is exactly the kind of harm anticipated, the possibility of which made International Paper's activities abnormally dangerous.

77.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages

and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

78.     As a direct and proximate result of Defendant's actions, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

## COUNT VIII
## FRAUDULENT SUPPRESSION

79.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 78 above as if fully restated herein.

80.     Federal and State environmental statutes and regulations, industry standards, and South Carolina common law create duties on the part of Defendants to disclose, report, and warn of potential exposure to hazardous and toxic chemicals and wastes to all of the Plaintiffs.

81.     Defendants breached these duties owed to Plaintiffs in a number of respects, including, without limitation, the following:

a.     Failing to warn and advise Plaintiffs, including the public at large, of the dangers caused by International Paper's past emissions of toxic chemicals which International Paper's knew or should have known has endangered Plaintiffs and others by invading their homes, property, breathing zone, schools and the places they occupy;

b.     Failing to provide Plaintiffs and others with knowledge as to what would be a reasonable, safe, and sufficient protection, if there were any, to protect the

plaintiffs and others from harm and life threatening injuries as a result of exposure to the Plaintiffs and others by the International Paper's emissions; and,

c.      Failing to disclose that International Paper's operations included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

82.    These failures of Defendants to disclose to Plaintiffs such information is in direct violation of federal and state law and constitutes a concealment of material fact which should have been made known to the Plaintiffs.  This concealment of and/or failure to report the material facts to Plaintiffs amounts to fraudulent nondisclosure.

83.    Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

84.    As a direct and proximate result of International Paper's actions have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

**COUNT IX**
**UNJUST ENRICHMENT**

85.    Plaintiffs incorporate herein by reference the allegation set forth in paragraphs 1 through 84 above as if fully restated herein.

86.     Defendant International Paper Company has been, and continues to be, enriched by its acts and omissions, including by its failure to prevent and control particulate matter and other airborne materials, including associated hazardous substances, from being released onto Plaintiffs' persons and properties and by its use of Plaintiffs' properties as its own effective supplementary dumping grounds.

87.     Defendants lack any legal justification for allowing its particulate matter and other airborne materials, including associated hazardous substances, to enter and remain upon Plaintiffs' persons and properties.

88.     Under the circumstances described herein it would be inequitable for Defendants to retain the benefits of its actions without paying the value thereof to Plaintiffs.

89.     No other remedy at law can adequately compensate Plaintiffs for the damages occasioned by International Paper's conscious choices to fail to prevent and control, and to store on Plaintiffs' properties, particulate matter and other airborne materials, including associated hazardous substances, in order to save expenses of effectively preventing the release of, controlling, storing, and containing such materials.

90.     Plaintiffs are entitled to recover damages and other relief against Defendants, including but not limited to, for the following: 1) assessment and remediation damages and costs; 2) the loss of the use and enjoyment of property because of annoyance, discomfort, inconvenience, and other damages caused by the conditions created by Defendants; 3) consequential and incidental damages; 4) disgorgement of profits realized; 5) unjust enrichment; 6) diminution in value of and stigma to property; and 7) injunctive relief to prevent further such action and inaction.

91.     As a direct and proximate result of International Paper's actions, Plaintiffs have been injured and damaged in ACTUAL, CONSEQUENTIAL and PUNITIVE damages.

**JURY DEMAND and**
**AD DAMNUM**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby demand trial by struck jury on all of the issues that have been or may hereafter be raised in any of the pleadings, whether filed by or on behalf of Plaintiffs or International Paper. Plaintiffs further demand judgment for the following relief:

Injunctive relief requiring International Paper:

- To refrain from any further release of the Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility;

- To conduct an investigation to determine the degree to which the Hazardous Substances, Particulate Matter, and Noxious Odors released from the Facility have contaminated Plaintiffs' homes and property and the entire Georgetown Community;

- To conduct an assessment to determine the manner in which they can remediate and remove from Plaintiffs' homes and property and the entire Georgetown Community all traces of the Hazardous Substances, Particulate Matter, and Noxious Odors that it released from the Facility; and

- To remediate and remove from Plaintiffs' homes and property and the entire Georgetown Community all traces of the Hazardous Substances, Particulate Matter, and Noxious Odors that it released from the Facility.

- Compensatory damages in an amount to be assessed by the jury as just and proper, but including, without limitation:

  - All expenses and economic losses;

  - Out-of pocket expenses for clean up and remediation;

  - Business losses;

  - Loss of income;

  - Reasonable and just actual and consequential damages for disruption of Plaintiffs' lives, for nuisance, for trespass, and for all other harm suffered by Plaintiffs;

- Punitive damages in an amount to be assessed by the jury as just and proper and in an amount sufficient to punish International Paper and to deter future misconduct;

- Appropriate attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

- Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED:

BY:    _____/s/  J. Edward Bell, III_____

J. Edward Bell, III (1280)
J. Ryan Heiskell (10212)
Bell Legal Group, LLC
232 King Street
Post Office Box 2590
Georgetown, South Carolina 29442
TEL:  (843) 546-2408
FAX: (843) 546-9604
ATTORNEYS FOR PLAINTIFFS

August 10, 2009

Additional attorneys for Plaintiffs whose motions for permission to practice *Pro Hac Vice* will be filed immediately:

Robert Leslie Palmer, Alabama State Court ID # PAL007
Gregory A. Cade, Alabama State Court ID # CAD010
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, AL  35222
Telephone:  205-328-9200
Facsimile:  205-328-9206